MABEL FLORENCE JONES BROWN, TOM D. JONES AND CARRIE E. JONES, v. C. G. HODGES AND WIFE, CARRIE HODGES, AND CHARLES M. HODGES.

(Filed 1 November, 1950.)

**1. Boundaries § 1—**

The boundary called for in a deed is a question of law for the court, and the location of the boundary on the land is a question of fact for the jury upon conflicting evidence, but when the location is admitted or the evidence in regard thereto is not conflicting, the location of the boundary is also a question for the court.

**2. Boundaries § 3a—**

The courses and distances set out in a deed control unless the deed contain a more certain description.

**3. Boundaries § 3b—**

A stake is not a monument, and therefore oral evidence of the erection of a stake as a corner, or oral evidence that a line is surveyed along a line of stakes, cotemporaneously with the execution of the deed, is not admissible to control the course and distance or a natural boundary called for in the deed.

**4. Same—**

A highway is of such permanent character as to become a monument of boundary, and when called for in a deed, the highway as it existed at the time of the execution of the deed controls course and distance as set out in the instrument.

**5. Boundaries § 5a—**

Where there is no dispute as to the location of the highway as it existed at the time of the execution of the deeds in question, calls in the deeds to the highway control, and parol evidence that the courses and distances as set out in the deeds ran along a line of stakes where the parties anticipated the highway would be located, is incompetent.

**6. Boundaries § 10—**

Where the location of a highway as it existed at the time of execution of the deeds is not in dispute, and the deeds call for the highway as the dividing line between the contiguous tracts, the location of the dividing line is the center of the highway as it then existed, as a matter of law, and the court should direct a verdict to this effect in a processioning proceeding.

APPEAL by defendants from *Crisp, Special Judge,* at June Term, 1950, of WATAUGA.

A processioning proceeding to determine the true boundary line between the lands of the plaintiffs and of the defendants.

The proceeding was here on a former appeal,—the opinion rendered then being reported in 230 N.C. 746, 55 S.E. 2d 498. That appeal challenged the correctness of judgment as in case of nonsuit. The facts essential to presentation of the question then before the Court are there stated. It is said there that "a reading of the averments in the answer of defendants in connection with the stipulation of parties, entered upon the call of the case for trial in Superior Court, reveals that defendants do not question plaintiffs' title, and that the only matter in controversy is the location of the dividing line between the lands of plaintiffs and the lands of defendants, that is, the location of the State highway admittedly called for in deeds under which both parties claim," and that, therefore, the cause should not be dismissed as in case of nonsuit, citing *Cornelison v. Hammond,* 225 N.C. 535, 35 S.E. 2d 633. And it was held that there must be another trial when the issue may be submitted to and answered by the jury.

Upon the retrial these facts appear from stipulation of the parties: Plaintiffs and defendants, owning adjoining lands, derive their respective titles from a common source, Edward Hodges. The lands were formerly parts of the dower land of the widow of Edward Hodges. Subsequent to her death, the land was partitioned among the heirs at law of her deceased husband by the execution of cross partition deeds on 3 June, 1927.

One of these partition deeds is from H. C. Hodges, *et al.,* to D. E. Lookabill and other heirs at law of Susan Lookabill, a deceased daughter of Edward Hodges. Plaintiffs derive their title by *mesne* conveyances in this deed. The specific description appearing in it reads as follows: "Beginning on a stake, G. E. Hayes' corner, running south with the old road 40 poles to a stake in Hayes' line; thence south 34 deg. east with the old road, 10 poles to a stake; thence east 23 poles to a stake in the highway; thence north 15 deg. east with the highway 50 poles to a stake in Greene's line; thence west with Greene's line 37 poles to the Beginning, containing 9 acres more or less."

Another of these partition deeds is from D. E. Lookabill, *et als.,* to C. G. Hodges. This is the deed under which defendants claim. The specific description in it reads in pertinent part as follows: "Beginning on a locust on the north bank of the old Boone and Jefferson road, H. C. Hodges' corner, running north with said H. C. Hodges' line 46 poles to a stake in Greene's line; thence west with Greene's line 52 poles to a stake at the highway, Lookabill heirs' corner; thence south 15 deg. west with the highway 50 poles to a stake at the highway," thence various courses and distances "to the Beginning,—containing 18 acres, more or less."

There does not appear to be any controversy (1) as to the location of the points of beginning of the two tracts, and (2) as to the location of the Greene line. And it appears that both the deed, under which plaintiffs claim, and the deed under which defendants claim, call for the highway and run with it,—the plaintiffs "north 15 deg. east . . . 50 poles," and the defendants "south 15 deg. west . . . 50 poles," one the reverse of the other but being identical."

The plaintiffs allege and contend in their petition that the true line between their lands and the lands of the defendants is and should be located and established as follows: "Beginning at a stake at the highway and running thence north 15 east with the highway 40 poles to a stake in L. A. Greene's line, now W. H. Greene's line"; but they further allege and contend that said line runs with the original survey of the highway, as said survey existed at the time the lands were originally "sold off by the heirs of Louisa Ingram," and before the new highway, as now located, was established and constructed.

Defendants deny the location of the true line between their lands and the lands of the plaintiffs as plaintiffs contend it to be. And they contend that their deed, bearing date 3 June, 1927, calls for the highway as then and as now located.

Upon the trial in Superior Court the surveyor, appointed by the court, reported on the contentions of both of the parties. The location of the true dividing line as contended for by plaintiffs is represented on the court map by the line from K to L. And the location of the true dividing line as contended for by defendants is represented on the court map by the line from X to Y, the center line of the present highway.

And upon the trial all the evidence tends to show that at the time the partition deeds were executed there was a highway known as the Boone-Todd Highway, or Highway #69, which passed through the property, and that the new highway #221 follows substantially the location of that highway—the old highway being crooked, and the new one straight. All the evidence tends to show that there never has been a highway along the line as contended for by plaintiffs. But plaintiffs, over objection by defendants, were permitted to show by parol evidence that when Surveyor

Norris, in surveying the lines for the land of the Lookabill heirs, plaintiffs' predecessors in title, reached the end of the call "east 23 poles to a stake in the highway" he ran "north 11 poles," and then "north 15 deg. east" where he found "stakes for a road." But there is no evidence that the surveyor marked the line, or marked a corner at the end of the line as run by him. Then he was asked, over objection, "What did you find along the line 'thence north 15 deg. east with the highway 50 poles to a stake in Greene's line?' ", to which he replied, "The stakes I spoke of is all. I don't remember what kind of crop, if any, was growing. There was no constructed highway there at that time."

This surveyor was also permitted to testify, over objection by defendants, that in surveying the lines for the deed under which defendants claim, he ran the second call "west 52 poles" where he found stakes for a highway, and then ran south 15 west with those stakes. But there is no evidence that a corner was marked at the end of the 52 poles.

Plaintiffs were permitted, over objection by defendants, to introduce oral evidence as to the general reputation in the community that the survey stakes indicated the place the new highway was to be. But, quoting the surveyor, "There never was any road built at the survey I am speaking of and wasn't any road there, only stakes. . . . There never was any road built over where I stopped . . . To go from the second corner to the Hodges tract to a road you have to go to the point marked "X" on the map. To go along a road and highway to go down the next call, there is no highway to go along except the one that is there now."

During the trial plaintiffs and defendants stipulated in open court that since plaintiffs' contention as to the dividing line was the highway survey shown on the court surveyor's plat, and that defendants' contention as to the dividing line was the present Highway #221 shown on said plat, that if the plaintiffs should prevail in this suit, the dividing line would be the center line of said highway survey,—in other words, the line from K to L; and if the defendants should prevail, the dividing line would be the center of the present Highway #221, in other words, the line from X to Y.

The court submitted this issue to the jury: "Where is the true location of the dividing line between the lands of the plaintiffs and those of the defendants?"

Defendants requested peremptory instruction that the jury answer the issue as they contend. The request was denied, and defendants excepted.

The jury answered the issue "K to L."

From judgment on the verdict in favor of plaintiffs, defendants appeal to Supreme Court and assign error.

*Trivette, Holshouser & Mitchell and Burke & Burke for plaintiffs, appellees.*

*Bowie & Bowie and Higgins & McMichael for defendants, appellants.*

WINBORNE, J.   The defendants, appellants on this appeal, in the first instance, assign as error, and properly so, the rulings of the trial court in permitting plaintiffs to offer, and the jury to consider, parol evidence tending to vary the calls for, and with the highway as contained in the description of the land conveyed in the deeds under which both the plaintiffs and the defendants claim.   And, too, upon the competent evidence and stipulation of parties shown in the record on this appeal error is made to appear in the denial of defendants' request for peremptory instruction as prayed.

"A deed is construed by the court, not by the jury.   What land by its terms it was intended to cover is just as much a matter of law as what estate it conveys,"—*Ruffin, J.*, in concurring opinion in *Reed v. Shenck,* 14 N.C. 65.   And it is settled law in this State that, in processioning proceedings to establish a boundary line, which is in dispute, what constitutes the dividing line is a question of law for the court, but a controversy as to where the line is must be settled by the jury under correct instructions based upon pertinent evidence.   *Huffman v. Pearson,* 222 N.C. 193, 22 S.E. 2d 440, and cases there cited, and others.

But if the court declares what the boundary is, and the location of this boundary is admitted, the whole resolves itself into a question of law.   *Miller v. Johnston,* 173 N.C. 62, 91 S.E. 593.

The same principle would apply when the location of the declared boundary is uncontroverted by evidence.

It is also a well settled rule in questions of boundary that course and distance govern unless there be in the deed some more certain description by which one or both may be controlled.   The terminus of a line must be either the distance called for in the deed, or some permanent monument which will endure for years, the erection of which was cotemporaneous with the execution of the deed.   *Reed v. Shenck, supra; Gause v. Perkins,* 47 N.C. 222; *Hill v. Dalton,* 140 N.C. 9, 52 S.E. 273.   A stake is not such monument.   A stake called for in a deed to indicate a corner is too lacking in stability and fixedness to serve as monument for that purpose.   *Clark v. Moore,* 126 N.C. 1, 35 S.E. 125.   Stakes, as aptly stated by *Hall, J.,* in concurring opinion in *Reed v. Shenck, supra,* "speak more of locality, to be sure, than floating feathers on the water, but they are as unfit to be boundaries of land."

Hence, oral evidence of the erection of a stake as a corner, or oral evidence that a line is surveyed along a line of stakes, cotemporaneously with the execution of a deed, is not admissible to control the course and distance or the natural boundary called for in the deed.   *Reed v. Shenck, supra; Gause v. Perkins, supra.*

Moreover, "whenever a natural boundary is called for in a patent or deed the line is to terminate at it, however wide of the course called for

it may be, or however short or beyond the distance specified." *Cherry v. Slade,* 7 N.C. 82; *Hill v. Dalton, supra; Bowen v. Lumber Co.,* 153 N.C. 366, 69 S.E. 258.

A highway, though artificial, is of such permanent character as to become a monument of boundary within the principle stated as to a natural boundary, by which course and distance called for in a deed are controlled. *Hough v. Horne,* 20 N.C. 369.

In the light of these principles, the terminus of the line "thence east 23 poles to a stake in the highway," appearing in the deed to Lookabill, under which plaintiffs claim, is the highway as it existed at the time of the execution of the deed,—regardless of the distance. And the next call "thence north 15 deg. east with the highway 50 poles to a stake in Greene's line," appearing in the said deed, runs with the course of the highway, and terminates at Greene's line as each existed at the time of the execution of the deed, irrespective of the course and distance set out.

Likewise, the terminus of the line "thence west with Greene's line 52 poles to a stake at the highway, Lookabill heirs' corner," appearing as the second call in the deed under which defendants claim is at the highway in Greene's line, as each existed at the time of the execution of the deed. The point reached is the Lookabill heirs' corner, that is, plaintiffs' corner above described, irrespective of the distance specified in the call. And the next call "thence south 15 deg. west with the highway 50 poles to a stake at the highway," appearing in defendants' deed, runs with the highway, and terminates at the highway, as it existed at the time of the execution of said deed, irrespective of the course set out in the call.

Hence the highway, as it existed at the time the said deeds were executed, is the true dividing line between the lands of the plaintiffs and the lands of the defendants. Defendants were entitled to have the trial court so declare. The location of the highway, as it then existed, according to evidence, is not disputed. Hence the location of it becomes a matter of law. Defendants were entitled to have the court so declare.

New trial.